Thomas D. DUNCAN, Appellant,

v.

Jean Mann WOLD, Executrix of the Estate of Joseph Vear Mann and the following named beneficiaries under the August 10, 1983 Will of Joseph Vear Mann: Jean Mann Wold, James Albert Mann, Olive Mae Washington (Deceased), Martha Kay Johnson, Henry Wylie Sholar, Scott Sholar, Thomas J. Duncan, Benjamin M. Duncan, Helen Duncan (Dennis), Jane Lancaster (Duncan) Tanner, Appelles.

No. 91–CA–2278–MR.

Court of Appeals of Kentucky.

Oct. 23, 1992.

Discretionary Review Denied by Supreme Court March 11, 1993.

William K. Caylor, Lexington, for appellant.

No appearance for appellee by counsel or pro se.

Before LESTER, C.J., and McDONALD and WILHOIT, JJ.

LESTER, Chief Judge.

This is an appeal from a judgment entered upon an opinion dismissing appellant's complaint which sought to overturn the District Court's order denying probate.

Jewel J. Mann, the natural mother of the plaintiff-below, Thomas D. Duncan, and Joseph Vear Mann, the natural father of the defendant-below, Jean Mann Wold, were married in 1952. Jewel brought into the marriage some real estate the surface rights to which she sold in 1974 while retaining the mineral rights. The balance of the modest marital estate was accumulated during the union. The parties had acquired a home on Leawood Drive in Frankfort where they lived until the wife's death on March 23, 1977.

On September 7, 1973, Jewel and Vear executed a joint and mutual will leaving their estate equally divided between Thomas Duncan and Jean Wold after the death of Jewel and Vear. The document was drafted by Jewel Mann's nephew, attorney William A. Johnson. Following his wife's death, Vear probated the mutual will, and by the terms of Item II thereof, he succeeded to the entire estate, both real and personal, with "full power and authority to sell, convey or dispose of all or any part of our said estate."

On April 27, 1983, Vear sold the Leawood Drive property and held the first mortgage for $84,000. The following month he moved to North Carolina, near his daughter, Jean, and executed several wills, the last of which was dated on August 10, 1983, in North Carolina, which left specific bequests of $1,000 each to four individuals, including appellant herein, with the bulk of the estate including the proceeds of the Kentucky mortgage and the mineral rights to Jean Mann Wold. This residuary clause left 15% thereof to Jean and 1/6 to each of six grandchildren or step-grandchildren. The North Carolina will was admitted to probate in that state following Vear's death on December 6, 1984. Jean was named executrix. On December 14, 1984, Duncan applied to the Franklin District Court for appointment as executor of Vear's estate under the Kentucky joint and mutual will which was so ordered with an additional entry placing the proceeds of the mortgage in escrow. On July 5, 1985, the District Court vacated its order of probate on the grounds that Vear was a resident of North Carolina at the time of his death and also released the escrowed funds to Jean as executrix of the North Carolina estate.

Duncan then filed a complaint in the Franklin Circuit Court that the mutual wills constituted an irrevocable contract and that any wills executed thereafter were null and void. At first the court dismissed the cause for lack of jurisdiction but then reversed itself upon motion to vacate judgment and assumed jurisdiction. Thereafter, evidence was taken, which we will review later, and in August of 1991, the court rendered judgment affirming the Franklin District Court and dismissing the complaint. In its opinion the court recognized that the law of joint wills is governed by KRS 394.540 effective in 1972, a year before the execution of the will before us. The appellant does not take issue with this position. The statute provides:

(1) A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after June 16, 1972, can be established only by:

(a) Provisions of a will stating material provisions of the contract;

(b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

(c) A writing signed by the decedent evidencing the contract.

(2) The execution of a joint will or mutual wills gives rise to no presumption of a contract not to revoke the will or wills.

In dealing with the litigation, the Circuit Court wrote:

The issues presented in this case require an application of the three-prong test of KRS 394.540. If the three criteria of the statute are satisfied, then the 1973 joint will can be considered an irrevocable contract. A close scrutiny of the joint will, however, leads this Court to the conclusion that the joint will is unable to clear these three hurdles.

Subsection (a) requires that the language of the contested will must set

forth the material provisions of the contract that is alleged to exist. On this point the Kentucky Court of Appeals wrote that "[n]o longer will mutual or joint wills be considered to constitute an irrevocable contract [by the Courts] unless the will by its terms states plainly that its provisions are to be considered a contract." *Martin v. Cassady*, Ky.App., 628 S.W.2d 888 (1982). A careful reading of the 1973 will can provide no such clear language stating material provisions of·a contract. Neither does the will make any express references to outside contracts sufficient to satisfy the requirement of subsection (b).

Under subsection (c), a contract may be established by writings signed by the decedent evidencing a contract. Plaintiff has introduced a series of the decedent's personal letters which he contends reveals the decedent's desire to dispose of his estate in accordance with the spirit of the 1973 will. These letters, however, do not rise to the level of evidencing a contract required to meet the demands of subsection (c).

Prior to June of 1972, the Kentucky Courts had uniformly held that a joint will could not be revoked or altered by a decedent's spouse to deprive a beneficiary of property or wealth. *Hatfield v. Janell*, Ky., 433 S.W.2d 346 (1968). The line of reasoning held that once a surviving spouse accepted the benefits of a joint will from the decedent, that act in and of itself constituted the fruition of the contract. 57 Am.Jur., Wills, Section 712 and 713. The death of a complying party to the contract prevented the surviving spouse from ever tampering with the joint will. *[Boner's] Administratrix v. [Chesnut's] Executor*, Ky., 317 S.W.2d 867 (1958).

But with the passage of KRS 394.540 the legislature clearly rejected the viewpoint of the permanency of joint wills. KRS 394.540(2) states emphatically that the execution of a joint and mutual will does not create a presumption that it is an irrevocable contract, and it "is not susceptible of any other interpretation." *Martin v. Cassady*, Ky.App., 628 S.W.2d 888 (1982). If plaintiff cannot furnish

any evidence to meet the three prongs of KRS 394.504, his argument fails. In this case, plaintiff has not furnished sufficient evidence to meet this test.

To avoid the unfavorable outcome dictated by sections (1) and (2) of KRS 394.-540, plaintiff argues that the statute has no relevancy because it refers only to the "execution" of a joint will and not to the probating of one. Plaintiff contends that KRS 394.540 only applies to the interim period after the execution of a will and before the probating of it in court.

This Court refuses to accept this line of reasoning in light of the Kentucky Court of Appeals ruling in *Martin v. Cassady*, Ky.App., 628 S.W.2d 888 (1982). In *Martin*, husband and wife had executed a joint and mutual will and the husband, upon the wife's death, had probated it. Subsequently, the husband executed a codicil which altered the joint will. The Court of Appeals permitted the codicil to stand on the grounds that the first will was revocable. The Court reasoned that the first will did not meet the criteria of KRS 394.540 which would have made it contractually binding. The fact that the joint will had been probated did not in (sic) any effect on the decision of the Court.

In spite of the logic contained in the trial courts opinion, we must disagree in one respect. The entry seems to hold that a mutual will must meet all three "criteria", "hurdles" or "prongs" of KRS 394.540. First, we note that between subsections (1)(a) and (b) there is no word of conjunction such as "and" while between (b) and (c) we note the presence of "or." This Court wrote in *Martin, supra,*:

We interpret the statute to mean that no longer will mutual or joint wills be considered to constitute an irrevocable contract unless the will by its terms states plainly that its provisions are to be considered as a contract [subsection (1)(a), KRS 394.540], or unless the conditions of subsections (b) and (c) of the statute are met.

What the *Martin* Court said was that if (a) standing alone is met the will is a contract. The same would be true as to (b) as well as (c) since the Legislature utilized the word

"or" between the second and third subsections. Therefore, we hold that sufficient evidence under any one of the subsections is sufficient to establish the mutual will and it is not necessary to adduce proof under all three.

Appellant bases his position upon subsection (c) in that he relies upon certain unsigned letters from Vear and attorney Johnson's recollection as to Vear's intentions. The trial court made the finding that this evidence, most particularly the letters, did not rise to the level "of evidencing a contract required to meet the demands of subsection (c)". After reviewing the record we must agree with the trial court and we do so whether viewed from the law of contracts or the law of wills.

KRS 394.540 makes it more difficult to establish joint wills than prior to its enactment, for our previous law provided that a contract for reciprocal wills need not be expressed and could arise by implication from the circumstances made clear by the parties. *Wright v. Wright*, 215 Ky. 394, 285 S.W. 188 (1926); *Boner's Administratrix v. Chesnut's Executor*, Ky., 317 S.W.2d 867 (1958). This is no longer so.

Appellant would distinguish his cause from *Martin, supra*. We do not share this view. In both cases, there was an effort to make joint wills, and, again in both cases, there was no compliance with KRS 394.540 and therefore no contractual binding. In both cases, the will was probated. Absent statutory compliance the trial court was correct in following *Martin*.

For the reasons stated herein, the judgment is affirmed.

All Concur.